**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAMAR PORTER,** | ) | **CASE NO. 3:07CV3354** |
| | ) | |
| **PETITIONER,** | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **KHELLEH KONTEH** | ) | |
| | ) | |
| **RESPONDENT.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Lamar Porter, ("Porter"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Porter*, Lucas County Court of Common Pleas Case No. CR04-1293.  Porter filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 29, 2007.[1]  On the same day, he filed a Request for Leave to File Delayed Petition.[2]  (Doc. No. 2.)  On April 30, 2008, Warden Konteh filed his Answer/Return of Writ.  (Doc. No. 10.)  Porter filed his Traverse on August 26, 2008. (Doc. No. 16.)  The Warden filed a Reply on September 6, 2008.  (Doc. No. 17.)  This

---

[1]As the Court discusses, it has determined that the mailbox rule is applicable and the actual filing date was September 26, 2007, when Porter presented the Petition to the prison staff for mailing.  (*See* Section II.)

[2]On March 10, 2008, the Court denied this motion as premature since Respondent had not filed a Return seeking dismissal of the Petition as time-barred.  Subsequently, in Respondent's Answer, he argued that the Petition was untimely filed.  Therefore, the Court will consider all of  Porter's arguments regarding the delayed petition including Doc. No. 2 and the attachments.

matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Porter's Petition be denied.

## I. Procedural History

### A. Conviction

On February 11, 2004, a Lucas County Grand Jury indicted Porter for one count of aggravated murder and one count of aggravated robbery together with two firearm specifications.  (Resp. Exh. 1.)  A jury found Porter not guilty of aggravated murder, but guilty of murder, a lesser included offense, guilty of aggravated robbery and guilty of both firearm specifications.  The trial court sentenced him to serve a term of life imprisonment with parole eligibility after 15 years on the murder conviction, 3 years for the aggravated robbery, and an additional 3-year term for the firearm specifications, all to run consecutively.  (Resp. Exh. 7.)

### B. Direct Appeal

Represented by new counsel, Porter filed a timely Notice of Appeal to the Sixth District Court of Appeals, Lucas County, Ohio, and set forth five assignments of error:

1.  The trial court erred by not ordering a mistrial after the jurors expressed fears about Porter's family and friends attempting to intimidate them.

2.  Appellant's right to a public trial was violated when the trial court ordered that the courtroom and courthouse be cleared of all trial spectators.

3.  Appellant's convictions were against the manifest weight of the evidence. The State offered contradictory, inconsistent and nonspecific evidence as to key elements of the offenses.

4.  The trial court should have granted Porter's motion pursuant to Crim R. 29 because a rational trier of fact could not have found the essential elements of the crimes charged proven beyond a reasonable doubt.

5.  Appellant did not receive effective assistance of counsel and this prejudicially affected his right to a fair trial.

(Resp. Exh. 8.)  On February 10, 2006, the Court of Appeals affirmed the judgment of the trial court.  (Resp. Exh. 11.)

Porter, represented by new counsel, filed a timely appeal to the Ohio Supreme Court and raised the following propositions of law:

2

I.     Where there is extraneous contact with a juror in a criminal trial in an attempt to intimidate that juror, and the attempted intimidation is made known to the other members of the jury, the accused's right, under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, to a fair and impartial jury are violated.

II.    Where a criminal defendant is deprived of a public trial due to trial attorney's failure to object to closing of the courtroom, the Defendant's Sixth Amendment rights to a public trial and to effective assistance of counsel is violated.

(Resp. Exh. 12.)  On July 5, 2006, the Ohio Supreme Court denied leave to appeal and

dismissed the case as not involving any substantial constitutional question.  (Resp. Exh.

13.)

### C. Federal Habeas Petition

On October 29, 2007, Porter filed the instant Petition and asserted the following

grounds for relief:

**Ground One**: Right to a public trial guaranteed under the Sixth Amendment to the United States Constitution was violated.

**Ground Two**: Right to a fair and impartial jury guaranteed under the Sixth Amendment of the United States Constitution was violated.

**Ground Three**: Ineffective assistance of trial counsel.

(Doc. No. 1.)

## II.  Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337

(1997).  In the AEDPA, Congress enacted a period of limitations for the filing of habeas

petitions.  The statute provides, in relevant part:

(d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing

3

by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).  Direct review of a conviction includes review by the United States Supreme Court.  *Bell v. State of Maryland*, 378 U.S. 226, 232 (1964).  The party asserting the statute as a defense has the burden of demonstrating that the statute has run.  *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

In the instant action, Respondent asserts that Porter's Petition is time-barred because it was not filed within the one-year limitations period.  In Respondent's reply to Petitioner's traverse, he contends that Porter's conviction became final on October 3, 2006, ninety days after the Ohio Supreme Court refused to hear his appeal.[3]  From that date, he had one year, or until October 3, 2007, to file his habeas petition.

When Porter filed the instant Petition, he also included a Request for Leave to File a Delayed Petition (Doc. No. 2) alleging that the prison staff was responsible for his tardy filing.  According to prison records, Porter submitted a voucher for payment of $5.00 on September 26, 2007 from his prison account towards a filing fee in the U.S. District Court.  (Doc. 2, Attachment A.)  On the same day, he submitted a voucher purportedly covering postage to mail a package to the U.S. District Court in Toledo, Ohio.  (Doc. 2, Attachment B.)  However, according to Porter's personal account withdrawal slip, on October 1, 2007, the prison officials could not redeem the postage voucher as the account balance was insufficient.  *Id*.  The package was not mailed.

---

[3]Porter did not file any state post-conviction proceedings or any other form of collateral review that might have caused the running of the limitations period to be tolled.

4

Respondent argues that the declaration on page 15 of the Petition which was ultimately filed, signed and dated under penalty of perjury by Porter, indicates that it was placed in the prison mailing system on October 17, 2007, fourteen days beyond the due date.  Porter claims in his motion for leave to file a delayed petition that he gave his original petition to the prison staff on September 26, 2007, but they did not mail it when requested.

The prison mailbox rule, as articulated by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 276 (1988), holds that a *pro se* prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself sees the documents.  The *Houston* Court adopted the prison "mailbox" rule because it recognized the fact that prisoners cannot take the steps available to other litigants to monitor the processing of filings with the court.

> Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the [petition] is stamped "filed" or to establish the date on which the court received the notice.  Other litigants may choose to entrust their [filings] to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation.  And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the [filing] was not stamped on the date the court received it.  *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them.  Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his [filing] to prison authorities whom he cannot control or supervise and who may have every incentive to delay.  No matter how far in advance the *pro se* prisoner delivers his [filing] to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time.  And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the [filing] on the date received.  Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his [filing] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities– and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston* at 271-72.

The mailbox rule was subsequently extended to apply to the timeliness of a state prisoner's filing of a habeas petition under 28 U.S.C. § 2254.  *Rules for Governance of 28 U.S.C. §§ 2254*, Rule 3(d).  Rule 3(d) incorporated *Houston*'s judicially created rule, and now provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.  If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule.  Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

§ 2254, Rule 3(d) (2004).[4]

Under *Houston* and Rule 3(d), in order to prove that a petition was timely filed, a prisoner must demonstrate that he timely deposited the papers with a prison official.  *See United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th Cir.), *cert. denied*, 543 U.S. 1005, 125 S.Ct. 624 (2004).  An inmate can establish the date on which he gave the

---

[4]Currently, this rule mirrors precisely the requirements for filing Notices of Appeals, *see* Fed.R.App.P. 4(c)(1) and § 2255 petitions, *see* Rules Governing Section 2255, Rule 3(d).  The *Houston* Rule was first codified in the federal appellate rules in December, 1993:

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

Fed.R.App.P. 4(c)(1) (eff. Dec. 1993).

In December, 1998, this rule was amended with the following sentence added in between the two sentences quoted above: "If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule."  Fed.R.App.P. 4(c)(1) (eff. Dec. 1998).

Subsequently, in 2004, Rule 3(d) was amended to incorporate the "legal mail" provision of Rule 4(c).

6

petition to a prison official in two ways. First, "[i]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." *Id*. at 1144; Rule 3(d). Second, the inmate may submit a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting forth the petition's date of deposit with prison officials and attest that first-class postage was prepaid.[5] *Id*.

In cases where it is unclear when an inmate deposits legal documents with prison officials, courts have assumed that it was done on the date the document was purportedly signed. *See Palmer v. McKune*, 2008 U.S. Dist. LEXIS 39166, *15, (D. Kan., May 13, 2008); *United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999). *Porter v. Greiner*, No. 00-cv-6047, 2005 U.S. Dist. LEXIS 31828, 2005 WL 3344828, at *7 (E.D.N.Y. Nov. 18, 2005); *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 328 n.4 (W.D.N.Y. 2005); *Pack v. Artuz*, 348 F. Supp. 2d 63, 66 n.2 (S.D.N.Y. 2004); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998).

Upon review of Porter's demand statement at the prison, the record shows that he did indeed present a package for mailing to the U.S. Courthouse in Toledo, Ohio, on September 26, 2007, along with vouchers for postage and a filing fee. The $5.00 filing fee was withdrawn from his prison account the next day. Even though no evidence was presented as to a legal mail log, the Court finds nothing in the record to refute Porter's verified claim made in his Petition that the package given to prison officials on September 26, 2007, contained an earlier dated habeas petition. He also maintains that he had sufficient funds for both the filing fee and postage in his account on September 26, 2007, but when the prison officials attempted to redeem his postage voucher on October 1, 2007,

---

[5]The *Houston* Court's holding makes no mention of prepaid postage. There the notice of appeal was simply considered filed when delivered to the prison officials for mailing, even though the petitioner lacked the necessary postage funds on the day he deposited it for mailing. *See Houston*, 487 U.S. at 268.

his account was deficient, and the package was not mailed.[6]  It is clear that Porter signed and dated the filed Petition under penalty of perjury on October 17, 2007, well after the one-year statute of limitations had expired.  But in that same document, Porter wrote: "This petition is delayed because the institution staff didn't put it in the mail when the petitioner requested, and had the funds to send the petition."  (Doc. No. 1, ¶ 18.) Therefore, the Court finds that Porter complied with *Houston* and Rule 3(d).  The Petition was timely filed on September 26, 2007, the date Porter presented it to the prison staff for mailing.

### III.  Exhaustion and Procedural Default

Respondent contends that Ground Three, specifically an ineffective assistance of counsel claim asserting that trial counsel did not object when the court was closed to the public, is procedurally defaulted.  Porter raised other ineffective assistance of counsel claims with the state appellate court but not this specific claim.  Even though Porter had not raised this claim at the appellate court level, he raised it with the Supreme Court of Ohio.  That court dismissed the appeal without a reasoned decision.

#### A.  Exhaustion

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem

---

[6]Prison records indicate that on September 25, 2007, Porter's account balance was $40.39.  (Doc. No. 17, Exh. 1.)  On September 27, 2007, $5 was taken from his account as a withdrawal to U.S. Courthouse Clerk's Office, leaving a balance of $35.39.  *Id*.  On October 1, 2007, the date the prison staff tried to mail the package, Porter's account balance was $2.68 after he had spent $32.71 at the commissary on the same date.  *Id*.  The postage fee was $4.60.  (Doc. No. 2, Attachment B.)

of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B. Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991).  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on

9

direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D.Ohio 2002).

Finally, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, "[d]emonstrating prejudice requires showing that

the trial was infected with constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982).

Although Porter raised before the Ohio Supreme Court an ineffective assistance of counsel claim pertaining to his counsel not objecting to trial closure, this does not cure his failure to pursue this issue in a manner that would have allowed the state appellate court to first consider it.  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added).  A petitioner does not fairly present a claim to a state's highest court if that court is procedurally barred from reviewing the claim on its merits.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Ohio courts have long held that "reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed."  *Goldberg v. Indus. Comm. of Ohio*, 131 Ohio St. 399, 404, 3 N.E.2d 364 (Ohio 1936); *accord State ex rel. Ohio Civil Serv. Employees Ass'n, Local 11 v. State Empl. Rels. Bd.*, 104 Ohio St. 3d 122, 124, 818 N.E.2d 688 (Ohio 2004); 4 O. Jur.3d, Appellate Review § 18.  Therefore, since the state appellate court never had occasion to consider Porter's claim on the merits, it was not presented to the Supreme Court of Ohio in a proper procedural context.  Consequently, Porter's ineffective assistance of counsel claim is unexhausted.  However, relief for this claim is no longer available to Porter in state court.  Requiring him to attempt a delayed appeal pursuant to Ohio App. R. 5(A) would be futile as he perfected his appeal as of right and should have raised this claim at that time.  *See* Ohio App. R. 5 ("A motion for leave to appeal shall be filed with the court of appeals and shall set forth the reasons for the failure of the appellant to perfect an appeal as of right."); *see also Starcher v. Eberlin*, No. 1:05cv1314, 2006 WL 1515659 at *5 (N.D. Ohio May 30, 2006) (Adams, J.)

Furthermore, Porter has procedurally defaulted his ineffective assistance of trial counsel claim by failing to raise the issue on his initial direct appeal.  Under the first prong

11

of *Maupin*, it is clear that Porter failed to comply with a state procedural rule because Ohio law provides that a failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the doctrine of *res judicata*. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (*citing Ohio v. Cole*, 2 Ohio St.3d 112, 113-14 (1982)); *Ohio v. Perry*, 10 Ohio St.2d 175 (1967). In Ohio, this rule specifically applies to ineffective assistance of trial counsel claims when a petitioner was represented by different counsel on appeal. *State v. Gover*, 71 Ohio St.3d 577, 579-580 (1995); *Cole*, 2 Ohio St.3d at 113-114. The Sixth Circuit has upheld the Ohio courts' application of *res judicata* in these instances.

Under the second prong of *Maupin*, the Ohio Supreme Court regularly enforces its procedural rule regarding failure to raise a claim on direct appeal. Courts in this district have held that a petitioner procedurally defaults claims that he failed to appeal to each level of the Ohio appellate courts: "In order to preserve his constitutional claims for habeas corpus review, a habeas corpus litigant must raise each constitutional claim in the appropriate forum and present those claims all the way through the Ohio courts." *Trent v. Wilson*, No. 5:06cv2422, 2007 WL 4246297 at *12 (N.D. Ohio Nov. 28, 2007); *Richter v. Jeffreys*, No. 1:05cv2465, 2007 WL 2572250 at *14 (N.D. Ohio August 31, 2007; *Gordon v. Bradshaw*, No. 1:04cv2299, 2007 WL 496367 at *13 (N.D. Ohio Feb. 12, 2007); *Hilton v. Anderson*, No. 5:05cv2010, 2006 WL 3423873 at *6 (N.D. Ohio Nov. 28, 2006) (*citing Van Hook v. Anderson*, 127 F.Supp.2d 899, 913 (S.D. Ohio 2001)). Therefore, this Court concludes that the Ohio Supreme Court declined to hear Porter's appeal, in part, because he had failed to raise the issue of ineffective assistance of trial counsel on direct appeal.

"Under the third prong of *Maupin*, it is clear that Ohio's procedural rule is an adequate and independent state ground for foreclosing federal review because the doctrine of *res judicata* is a complete bar to review. Moreover, Ohio's application of *res judicata* to claims of ineffective assistance of trial counsel is logical. Appellate counsel, who is independent of trial counsel, can make a professional judgment as to whether a claim of ineffective assistance is worth pursuing. Furthermore, appellate counsel should be

afforded deference in his decision to waive claims that are less worthy than the ones he ultimately chooses to litigate." *See Jones v. Barnes*, 463 U.S. 745, 746 (1983); *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Lastly, under the fourth prong, Porter has not made a claim of actual innocence or a claim of cause and prejudice for failing to comply with Ohio's procedural rule. *See Bousley v. United States*, 523 U.S. 614 (1998). Therefore, as Porter has no further state remedy, Ground Three is procedurally defaulted.

Even if Ground Three were not procedurally defaulted, it is without merit. The trial court decided to close the courtroom to spectators, other than the news media, prior to questioning each juror. (Tr. at 832, 834.) Porter's counsel did not object to this decision. In fact, Porter's counsel thought it was a "sound decision because of the circumstances." *Id*. at 781. He asked the trial court to revisit the issue depending upon what the jurors said when questioned. At the conclusion of the hearing, counsel made no request for reconsideration. Although the record does not indicate why counsel chose not to object to the courtroom closure, his determination not to do so appears to be trial strategy to protect his own client. He characterized the decision as "sound." Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel. There is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *See Strickland v. Washington,* 466 U.S. 668, 689 (1984); *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

13

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

## V. Analysis

Porter's remaining grounds are based on an incident of alleged intimidation of several jurors by unidentified courtroom spectators during a lunch recess. One juror

14

overheard a remark made by a spectator to other spectators "that they would remember their faces and it may cause them a problem depending on what the verdict was." (Transcript at 780.) The juror immediately reported the incident to the Court, which held a hearing whereat each juror was questioned as to their knowledge of the incident, and, if necessary, their ability to remain fair and impartial. *(Id*. at 780-826.) At the conclusion of the hearing, the Court denied defense counsel's motion for a mistrial and proceeded to close the courtroom to all spectators, except the press. (*Id*. at 829-834.)

### A. Ground Two – Fair and Impartial Jury

The Sixth Amendment right to trial by jury "ensure[s] criminal defendants a fair trial by a panel of impartial, indifferent jurors." *U.S. v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) *(quoting United States v. Davis*, 177 F.3d 552, 556- 57 (6th Cir.1999) (internal citation and quotation marks omitted)). To guard this right, the Court in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), held that any "private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is, for obvious reasons, presumptively prejudicial ... [,]" *Perry* at 651. Accordingly, "when possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the constitutional guarantee." *Id. (quoting Davis*, 177 F.3d at 556 (internal quotation marks and brackets omitted)). At a *Remmer* hearing, the defendant must prove actual juror bias, "and no presumption of prejudice arises merely from the fact that improper contact occurred." *Id*. at 651 (*citing United States v. Zelinka*, 862 F.2d 92, 96 (6th Cir. 1988)).

The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation ... [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen v. Spain* 464 U.S. 114 (1983) (*quoting Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

In *United States v. Rugiero*, 20 F.3d 1387 (6th Cir. 1994), the Sixth Circuit listed four points to consider in cases of possible improper juror contact:

15

(1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the ' *Remmer* hearing' is not inherently suspect.

*Id*. at 1390.

The state appellate court concluded that Porter was not denied a fair and impartial trial.

{¶ 9} Appellant's Assignment of Error No. I. asserts that the trial court abused its discretion in failing to grant his request for a mistrial. Appellant contends that the jurors could not act in a fair and impartial manner in reaching their verdict because they were informed of the fact that one of the jurors was "intimidated" by some spectators during a lunch break. That juror then spoke with some of the other jurors about the incident. Specifically, "Juror No. 5" told two other jurors who went to lunch with her that one person in a group of spectators standing near the stairs said, "remember their faces" when she and the two other jurors passed by. Juror No. 5 took this [to] mean that the group should remember the faces of the jurors and indicated that she was frightened. When Juror No. 5 and the two other jurors returned to the jury room after lunch, they mentioned the incident to some of the other jurors.

{¶ 10} When the trial judge learned about the incident, he engaged in a private, individual voir dire with each juror, and gave both the prosecution and appellant the opportunity to question each juror. Many of the jurors were aware of the situation. Almost all of the jurors claimed that the statement made by one member of the gallery did not frighten them. All of the jurors, and alternates, indicated that they would be able to decide the case solely upon the evidence and/or in a fair and impartial manner. After the trial court completed its voir dire of each member of the jury, appellant moved for a mistrial. The trial court denied the motion, finding that each juror, including the alternates, was "not tainted by the incident that occurred at lunch."

{¶ 11} Generally, when a trial court learns that there has been an improper outside communication with a juror, the court may hold a hearing in order to determine whether the outside communication biased the juror. *State v. Hessler*, 90 Ohio St.3d 108, 121-122, 2000-Ohio-30. However, the court is not required to hold an evidentiary hearing in compliance with *Remmer v. United States* (1954), 347 U.S. 227. Id. at 121 (Citations omitted.). Further, the burden is on the complaining party to establish actual prejudice. Id. (Citations omitted.) *See, also, United States v. Orlando* (C.A.6, 2002), 281 F.3d 586, 597, *citing United States v. Zelinka* (C.A.6, 1988) 862 F.2d 92, 95-96. In cases where the investigation of outside influences on jurors is necessary, a trial judge has broad discretion in dealing with the contact and in determining whether a mistrial should be declared. *State v. Phillips* (1995), 74 Ohio St.3d 72, 89. In order to demonstrate that the trial court abused that discretion, an appellant must show that the court's decision was arbitrary, unreasonable, or unconscionable. *State v. Xie* (1992), 62 Ohio St.3d 521, 527.

16

{¶ 12} As applied to the present case, appellant failed to demonstrate that there was any actual bias to his cause. The trial judge held an individual hearing with each juror and alternate in which he questioned each in order to ascertain the effect on each individual of the comment made to Juror No. 5. While two jurors expressed fear, one of those jurors stated that her fear arose from being on the jury, not from the statement made by a spectator to Juror No. 5. To repeat, both of these jurors, as well as the other members of the jury and the alternates, told the judge that they would base their decision on the evidence offered at trial and could be fair and impartial in reaching that decision. "A juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by a trial court." *Id*. (Citation omitted.). Accordingly, we find that the trial court did not abuse its discretion, and appellant's Assignment of Error No. I is found not well-taken.

(Resp. Exh. 11.)

The Court finds the state appellate court's decision was neither contrary to, nor an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. The trial court properly held a *Remme*r hearing privately questioning each juror. The prosecution and defense counsel were then given an opportunity to also ask questions. When the hearing was completed, defense counsel moved for a mistrial. The trial court denied the motion "finding that the jurors [were] not tainted by the incident that had occurred. The Court [found] that each and every juror, including the alternates, indicated they [could] continue to be fair and impartial and decide this case based solely on the evidence and the law as the Court will instruct them." (Tr. Transcript at 831-32.) Ground Two is without merit.

### B.  Ground One – Right to a Public Trial

Porter claims that his constitutional right to a public trial was violated when the trial court closed the courtroom to all non-media spectators during the closing arguments and the charge to the jury.

The Sixth Amendment guarantees a criminal defendant a public trial. U.S. Const. amend. VI. "An open courtroom is necessary to preserve and support the fair administration of justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly." *Waller v. Georgia*, 467 U.S. 39 (1984). Further, a public trial permits the general public to observe that the accused is "fairly dealt with and

17

not unjustly condemned, and that the presence of the interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id*. at 43.

The *Waller* Court held that the right to a public trial applied to suppression hearings and also set forth considerations that must be made before any part of a trial or hearing can be properly closed. *Waller* set forth a four-prong test to determine whether a closure violates the Sixth Amendment:  "[1] the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, [2] the closure . . . [is] no broader than necessary to protect that interest, [3] the trial court . . . consider[s] reasonable alternatives to closing the proceeding, and [4] [the trial court] . . . make[s] findings adequate to support the closure." *Id*. at 48.  A party may waive the Sixth Amendment right to a public trial. *See Degraffinreid v. Lafler*, 2006 U.S. Dist. LEXIS 52380, *13 (E.D. Mich. July 31, 2006).

Although public trials are strongly favored, the right to a public trial is not absolute and "may give way in certain cases to other rights and interests."  *Waller,* 467 U.S. at 45*; see State v. Sowell*, 2008 WL 2600222 at *7, Case No. 06AP-443 (Franklin Cty., Ohio Jun. 30, 2008)(an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension.)  A trial court has the authority to exercise control over the proceedings and may exclude those courtroom spectators whose conduct is likely to interfere with the administration of justice.  *Id*.

Courts have taken into consideration the extent of the closure, such as the duration of the closure and the "importance of the testimony rendered while the courtroom was closed."  *Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir. 1998).  "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. 44.  The propriety of the trial court's action depends on the particular circumstances of the case.  *United States v. Eisner*, 533 F.2d 987, 993 (6th Cir. 1976).  "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that

interest." *Press-Enterprise Co. v. Superior Ct. of Calif.*, 464 U.S. 501, 509 (1984).  The trial court should articulate the interest, "along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.*  Prior cases have justified closure of a court due to the fears of a witness testifying, *Eisner*, 533 F.2d at 417, exposure of an undercover officer to the public, *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2nd Cir. 1975), and witness intimidation by spectators.  *United States ex rel. Bruno v. Herold*, 408 F.2d 125 (2nd Cir. 1969).

"The violation of the right to a public trial is considered structural error and not subject to harmless-error standard." *Waller* at 49-50, fn.9.  "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply any error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).  Structural errors affect the "entire conduct of the trial from beginning to end . . . ." *Nevers v. Killinger*, 990 F.Supp. 844, 869 (E.D. Mich. 1997) (*citing Fulminante*, 499 U.S. at 309-310).

The state appellate court concluded that Porter was not deprived of his right to a public trial:

> {¶ 13} In Assignment of Error No. II, appellant maintains that by excluding all spectators from viewing the remainder of his trial, the court below violated his constitutional right to a public trial. We disagree.
>
> {¶ 14} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right was made applicable to the States by the Fourteenth Amendment. Article I, Section 10, of the Ohio Constitution also guarantees an accused the right to a public trial. Nevertheless, "the right to a public trial is not absolute and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension." *State v.. Whitaker*, 8th Dist. No. 83824, 2004-Ohio-5016, at ¶ 11 (Citations omitted.). Our review of a trial court's decision to close a courtroom to prevent intimidation by spectators is whether the trial court abused its discretion. *State v. Powell*, 9th Dist. No. 20067, 2001-Ohio-14, *citing State v. Bayless* (1976), 48 Ohio St.2d 73, 109. Further, the failure to object to closing of the courtroom constitutes a waiver of the right to a public trial. *Whitaker*, at ¶ 13.
>
> {¶ 15} Here, the trial court closed the courtroom prior to closing arguments as a result of the incident that happened during the recess for lunch and because a "couple of the jurors" indicated that they would be more comfortable during closing arguments and jury instructions without any spectators. Appellant did not object to the closing of the courtroom; therefore, he waived his right to a public trial. In fact, prior to the trial

> court's voir dire of the jury members, appellant's trial counsel stated that he thought it was a good decision under the circumstances. Moreover, the trial court's decision to close the courtroom was not arbitrary, unreasonable, or unconscionable. A few of the jurors did express some fear due to the remark made by one of the spectators to Juror No. 5. Consequently, the court below closed the courtroom to make them feel more at ease. Additionally, the only portions of the trial remaining were closing arguments and jury instructions. No new evidence was presented to the jury. We therefore conclude that appellant was not deprived of his constitutionally guaranteed right to a public trial, and appellant's Assignment of Error No. II is found not well-taken.

(Resp. Exh. 11.)

Porter argues that the denial of his right to a public trial is a structural error, which would require reversal of the conviction without a showing of prejudice.  Respondent contends that the right to a public trial is not absolute and that it was a reasonable response by the Court to the alleged jury intimidation.

The trial court's decision to clear the courtroom except for the media was based on the alleged intimidation of several jurors by courtroom spectators.  The court questioned the juror who reported the event.  Although she could not specifically identify the individuals, she knew they were in the courtroom.  (Tr. at 787.)  The trial court also questioned every other juror.   In spite of some expressed fear, each stated that they were able to rule impartially.  *Id*. at 794-826.

Following arguments by the attorneys to the court regarding the impartiality of the jury, the court articulated its interest in the integrity and safety of the jury, as required by *Press-Enterprise Co.,* 464 U.S. at 509.  *Id*. at 831-832.  The court decided to close the courtroom to spectators, other than the news media.  *Id*. at 832, 834.  This decision encountered no objection from the prosecution or Porter's counsel.  In fact, Porter's counsel thought it was a "sound decision because of the circumstances." *Id*. at 781.  He asked the trial court to revisit the issue after the jurors were questioned, but, at the conclusion of the hearing, he made no such request.  Porter waived his right when he agreed with the court's decision to close the courtroom.  "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Perry*, 438 F.3d 642 (6th Cir. 2006)(*quoting United*

20

*States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990)).  Furthermore, Porter's counsel offered no alternatives to the court.

As the spectator who made the comment could not be identified, and because all evidence had been presented, leaving only closing arguments and the jury charge, the trial court's decision was narrowly tailored.  The courtroom closure did not call into question the fundamental fairness of the trial, nor did it "affect[ ] the [structural] framework within which the trial proceed[ed]." *Fulminante*, 499 U.S. at 310.  It involved a "courtroom closure that was not substantial enough to undermine the values furthered by the public trial guarantee." *See Brown* at 544.

The state appellate court considered the reasons and the timing of the closure of the courtroom and concluded that Porter was not deprived of a constitutionally guaranteed right to a public trial.  The state appellate court further held that Porter waived his right to a public trial because his counsel not only failed to object, but agreed with the decision to close the courtroom.  These findings were not contrary to or an unreasonable application of Supreme Court precedent.  Ground One is without merit.

### VI.  Conclusion

For the foregoing reasons, it is recommended that Porter's Petition be denied.


                                        s/Greg White
                                        United States Magistrate Judge


Date:    February 2, 2009



### OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**